Genz, by guardian, Appellant, vs. Riddle, Respondent.

*September 12—October 8, 1929.*

For the appellant there was a brief by *Hostetter & Haley* of Bowling Green, Missouri, and *Jacobson & Malone* of Waukesha, and oral argument by *Marcus A. Jacobson* and *John Haley.*

For the respondent there was a brief by *Shannon & Cronin* of Oconomowoc, attorneys, and *Grant & Grant* of St. Louis, Missouri, of counsel, and oral argument by *A. D. Shannon* and *Lee W. Grant*.

OWEN, J. This action is brought by virtue of certain practice statutes of the state of Missouri to recover from the defendant, Hedwig Riddle, a portion of the estate left by Robert M. Riddle, her deceased husband. The plaintiff claims that she was an adopted child of said Robert M. and Hedwig Riddle and a legal heir of the said Robert M. Riddle, under the laws of the state of Missouri. Whether this action is authorized by the statutes of the state of Missouri is questioned, but we shall not consider it, for the reason that we prefer to base our decision upon the conclusion that the plaintiff was not an adopted child of Robert M. and Hedwig Riddle, and, consequently, not an heir of the said Robert M. Riddle at the time of his decease.

It appears that Richard D. Bacon was the natural father of the plaintiff, and that on the 23d day of September, 1916, when she was about six and one-half years of age, he released her to the Children's Home Society of Missouri, a charitable corporation organized under the laws of that state, for the purpose of having a suitable home secured for her by adoption or otherwise. The trial court found that in December, 1916, the Children's Home Society placed the plaintiff with Robert M. Riddle and Hedwig Riddle, his wife, who were residents of the city of St. Louis, on probation, as they were desirous of adopting a female child. At that time the statutory method of adopting children in the state of Missouri was by deed executed and acknowledged by the person adopting the child. On June 26, 1917, having then kept the plaintiff in their home for about six months, Mr. and Mrs. Riddle executed a purported deed of adoption of the plaintiff and caused the same to be filed in the manner

required by law. But on June 18, 1917, eight days before the execution of this deed, the legislature of the state of Missouri enacted a law repealing the law providing for the adoption of children by deed and enacted a new law providing for such adoption by a proceeding in the juvenile division of the circuit court of the county in which the person sought to be adopted resides, the relation to be created by a decree of that court. This law prohibited any person from transferring or receiving the custody of any child in the absence of an order from the proper juvenile court approving or ordering the transfer or custody of the child, for violation of which the law provided a penalty of imprisonment in the county jail for not less than three months or a fine of not less than fifty dollars.

It seems plain that this law not only supplanted the former method of adoption by deed, but visited substantial penalties upon those who transferred or received the custody of children by virtue of that method. We conclude that there was no legal adoption of the plaintiff by the Riddles under the laws of the state of Missouri at any time.

However, there is a long line of cases in Missouri holding that a court will enforce the rights incident to the statutory relation of adoption in the absence of a legal creation of the status where one takes a child into his home as his own, receives the benefits accruing to him on account of that relation, and assumes the duties and burdens incident thereto: this on the theory that the child having performed all the duties pertaining to that relation, the adopting parent will be estopped in equity from denying that he assumed the corresponding obligation. The courts of that state apply to such a situation the same principles that are invoked with reference to oral contracts affecting real estate to prevent an irreparable wrong to one who has fully or partially performed. Of the many cases in the state of Missouri to which we have been referred in support of this doctrine, we cite

*Holloway v. Jones* (Mo.) 246 S. W. 587; *Lynn v. Hockaday,* 162 Mo. 111, 61 S. W. 885; *Carlin v. Bacon* (Mo.) 16 S. W. (2d) 46, 48.

It is urged that this doctrine, so firmly established in the state of Missouri, saves the plaintiff's rights in and to the estate of Robert M. Riddle. As under this doctrine her rights, if any, rest upon equitable principles, we must inquire whether her subsequent relations with the Riddles give rise to equitable considerations.

We find that by agreement between the Riddles and the superintendent of the Home Society the plaintiff was returned by the Riddles to the Home Society on December 1, 1919; that she was placed by the Home Society in the home of Mr. and Mrs. Genz October 15, 1920, and that on the 6th day of January, 1924, the circuit court of Pike county, Missouri, sitting as a juvenile court, entered an order of adoption constituting said plaintiff the adopted child of said Mr. and Mrs. Genz, the plaintiff being then fourteen years of age, having in writing consented to such adoption as required by the statutes of the state of Missouri. She has since lived in the home of Mr. and Mrs. Genz and is undoubtedly their legally adopted child.

Certainly this situation raises no equitable claims in favor of the plaintiff to the estate of Robert M. Riddle. She remained in their home for three years, during which time she was kindly treated, clothed, nourished, and educated. By mutual agreement between the Riddles and the Home Society, owing to considerations looking to the welfare of the plaintiff, she was restored to the Home Society, which organization placed her in the home of Mr. and Mrs. Genz, with whom she has lived, affording filial comfort ever since. More than this, having arrived at the age when under the statutes of Missouri she was deemed competent to exercise judgment in that respect, she consented to her adoption by Mr. and

Mrs. Genz. Any court would be reluctant to accord to the plaintiff any portion of the Riddle estate under these circumstances. Judicial action to that end could not be induced by equitable considerations. Such action could only be in obedience to the hard-and-fast letter of the law. There having been no legal adoption, and there being no circumstances arousing the equitable powers of the court to prevent the consummation of wrong or fraud, the judgment of the lower court must be affirmed.

*By the Court.*—Judgment affirmed.