**Isabelle Stewart KEISER, Formerly Isabelle Stewart Wiedmer (Plaintiff), Respondent,**

v.

**Mary Stewart WIEDMER (Defendant), Appellant.**

**No. 29218.**

St. Louis Court of Appeals. Missouri.

Nov. 15, 1955.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 9, 1955.

G. F. Wright, and Boaz B. Watkins, St. Louis, for appellant.

Stamm, Millar, Neuhoff & Campbell, by David Y. Campbell, St. Louis, for respondent.

MATTHES, Judge.

This is a proceeding under the Declaratory Judgments Act, Sections 527.010 through 527.140 RSMo 1949, V.A.M.S., in which plaintiff-respondent (herein called plaintiff) seeks to be declared the lawfully adopted daughter of defendant-appellant, Mary Stewart Wiedmer (herein called defendant). The petition alleged, and the answer admitted, that Mary Stewart Wiedmer was duly adjudged by the Probate Court of the City of St. Louis, Missouri, to be a person of unsound mind, and that Victoria I. Smith is her duly appointed, qualified, and acting guardian.

In a former opinion by this court in this case it was determined that the plaintiff had the right to maintain an action under the Declaratory Judgments Act to determine her status as an adopted daughter of the defendant, independent of any controversy relating to rights growing out of that status. Keiser v. Wiedmer, Mo.App., 263 S.W.2d 63.

Following remand of the case the cause was tried resulting in a decree adjudging and declaring plaintiff to be the adopted daughter of defendant. The latter has appealed. The defendant, with candor, concedes the evidence was sufficient to justify the court in finding that a contract to adopt had been entered into between defendant and her husband on the one hand, and plaintiff's mother on the other, and that de-fendant failed to legally adopt plaintiff. But she maintains the judgment cannot stand for two basic reasons: (1) that no justiciable controversy existed between the parties as contemplated by the Declaratory Judgments Act; (2) that plaintiff's action is barred by the statute of limitations and laches. Complaint is also made that the findings of the court in some particulars were not supported by evidence, and that therefore the decree as entered should be modified.

On the former appeal of this case it was urged by defendant (respondent on that appeal) that no justiciable controversy ripe for decision was disclosed by plaintiff's petition by reason of which the trial court properly sustained defendant's motion to dismiss. In ruling the point against defendant this court said, Keiser v. Wiedmer, Mo.App., 263 S.W.2d loc. cit. 66:

"Plaintiff in this case proceeds on the theory that she is entitled to a declaration of the status as an adopted child by reason of a contract between defendant and plaintiff's natural mother entered into for plaintiff's benefit, and a refusal to perform on the part of defendant, thus creating a justiciable controversy ripe for decision.

"We have considered the contentions of respondent and have concluded that, under the authority of Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412, an action under the Declaratory Judgment Act to determine plaintiff's status as an adopted daughter of the defendant is maintainable, independent of any controversy relating to rights growing out of that status."

We must again rule this point against defendant. The record conclusively established plaintiff's pleaded theory. And the finding is warranted that legal adoption of plaintiff cannot be affected because of the impossibility of compliance with the requirements of the adoption statute resulting from defendant's adjudication in 1949.

The essence of defendant's second point is that if plaintiff was not compelled to

forego action to have her status determined until after defendant's death, she was not privileged and at liberty to select the time most favorable to her to initiate such action to have her status as an adopted child determined by court decree; she contends that plaintiff was put on notice in 1937 that defendant was denying that plaintiff was her daughter by adoption, and that plaintiff was then required to act, and her nonaction for approximately fourteen years after receiving such notice convicts her of laches.

 In a general sense laches is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. 30 C.J.S., Equity, § 112, p. 520. However, there is no fixed period of time within which a person must assert his claim or be barred by laches; the length of time depends upon the circumstances of the particular case. 30 C.J.S., Equity, § 116, p. 531. And by the weight of authority, mere delay in asserting a right does not of itself constitute laches. It must be delay that works to the disadvantage and prejudice of the defendant. 30 C.J.S., Equity, § 116, pp. 531–534. This rule has been followed by the courts of this state. In re Thompson's Estate, 362 Mo. 1043, 246 S.W.2d 791, 29 A.L.R.2d 1239; Schaeffer v. Moore, Mo.Sup., 262 S.W.2d 854; Carlin v. Bacon, 322 Mo. 435, 16 S.W.2d 46, 69 A.L.R. 1.

 Anderson, in his treatise on Declaratory Judgments, Volume 1, Section 344, page 794, says:

"Mere delay, in the absence of prejudice, resulting to someone is generally insufficient to be alleged as a basis for applying the rule of laches, in denying the relief. In other words, laches is not mere delay, but delay that works disadvantage or injury to an adversary, may be sufficient to constitute laches."

Since the question of laches, being a question of fact, is to be determined from all the evidence and circumstances adduced at the trial, In re Thompson's Estate, supra, we consider the evidence pertinent to this issue.

Plaintiff, whose name was then Rachel Elizabeth Oviatt, was placed in the care and custody of the Christian Orphan's Home in 1916. On March 4, 1919, she was taken by Albert E. Wiedmer, and Mary Stewart Wiedmer (defendant herein) from that institution for adoption. The Wiedmers changed her name to Isabelle Stewart Wiedmer. Plaintiff remained in the Wiedmer home continuously until her marriage on or about September 3, 1932. On September 6, 1937, Albert E. Wiedmer died, testate. Notwithstanding his failure to name plaintiff in his will, the defendant, in applying for letters testamentary upon his estate, designated plaintiff, under oath, as one of two children left by her deceased husband. During the course of administering her husband's estate defendant originally failed to inventory certain shares of stock of Ely & Walker Dry Goods Company as assets of the estate, claiming ownership thereof by virtue of an alleged gift from her husband. This precipitated a controversy between plaintiff and Mrs. C. P. Jasperson (who had also been taken by the Wiedmers into their home) on the one hand, and defendant on the other. The controversy was amicably adjusted, as evidenced by a petition filed by defendant as executrix of her husband's estate in the probate court requesting approval of an agreement theretofore entered into by the parties.

We are not persuaded to conclude, as urged by defendant, that the controversy put plaintiff on notice that defendant was denying that she was the adopted daughter of defendant, and that upon acquiring such notice, plaintiff should have taken affirmative action to establish her status if indeed she believed she was the daughter by adoption of defendant. Neither are we able to find that plaintiff's own testimony established knowledge on her part that in 1937, defendant was denying plaintiff was her adopted daughter. Careful analysis of the petition filed in the probate court and plaintiff's testimony compels the conclusion that the controversy was not centered on plaintiff's status, but rather on

the ownership of 2,599 shares of Ely & Walker Dry Goods Company common stock and certain dividends thereon. Defendant claimed said property by virtue of an alleged gift from her husband, whereas plaintiff and Mrs. Jasperson asserted the stock and dividends were assets of Mr. Wiedmer's estate, and that as his children they were entitled to share therein. Of significance and which render impossible the conclusion defendant would have us draw from the documentary evidence referred to and plaintiff's testimony are these facts: Defendant's sworn statement (application for letters testamentary) following her husband's death that plaintiff was a daughter of Mr. Wiedmer; the petition filed in the probate court whereby defendant recognized plaintiff was entitled to share in property having a substantial value which defendant was claiming as a gift, and finally, and of great importance, the conduct of defendant and her attitude toward plaintiff following the controversy over the assets above mentioned. According to the undisputed testimony, defendant lived with plaintiff in the latter's home, in plaintiff's words, "for the majority part of the time" following Mr. Wiedmer's death in 1937 and until defendant was adjudicated in 1949. During those twelve years there was no change in the attitude of defendant toward plaintiff. Defendant continued to refer to plaintiff as her daughter, and frequently displayed the same affection for plaintiff and plaintiff's children as was manifested prior to the time the controversy arose.

In light of the facts, concerning which there is very little dispute, we must hold that nonaction by plaintiff following the death of Mr. Wiedmer, and until after the defendant's adjudication, did not work a disadvantage to or prejudice the rights of defendant. Indeed, we entertain serious doubts as to the right of plaintiff to maintain the suit prior to the defendant's adjudication, after which, of course, she could not comply with the statutory formalities essential to bring about a legal adoption.

What has been said concerning the defense of laches has bearing upon the contention that plaintiff's right to have her status judicially determined is barred by the statute of limitations. (Defendant relies upon the 5 and 10-year statutes, Sections 516.120 and 516.110 RSMo 1949, V.A. M.S.). Generally the rule is that a cause or right of action accrues so as to start the statute of limitations running when the right to institute and maintain a suit arises, and not before. 54 C.J.S., Limitations of Actions, § 109, p. 11. And with respect to proceedings for a declaratory judgment, the same authority announces that the statute of limitations does not begin to run until an actual controversy has occurred. 54 C.J.S., Limitations of Actions, § 108, p. 11. Plaintiff contends that since there was a continuing duty on the defendant to legally adopt plaintiff, the statute of limitations cannot apply. This suggestion is tantamount to asserting that the statute can never be invoked successfully as a defense in a proceeding of the nature of the instant action, the purpose of which is to have a status declared. We find it unnecessary to pass upon and decide this proposition. It is sufficient to say that the facts presented to us preclude the application of the statute of limitations as a bar to plaintiff's suit.

The defendant urges with emphasis and insistence that the trial court erroneously included in its decree certain findings which are not supported by evidence. In particular defendant assails the recital in the introductory portion of the decree whereby the court found that the "allegations of plaintiff's petition are true", contending that each and every allegation appearing in plaintiff's petition was not proved. Obviously the challenged language can only be construed to mean that the court found that the essential elements of plaintiff's cause of action were supported by evidence.

It is also contended there is no support in fact for the recitals: (1) that "at all times" defendant intended to adopt plaintiff; (2) that defendant "at all times" held out plaintiff as her adopted daughter; (3) that "at all times" plaintiff acted as a daughter toward defendant. The finding of the court "that by her said representations and said agreement with plaintiff's natural mother,

and by her acts and conduct, defendant *in fact did adopt plaintiff*" is also assailed upon the theory that such a finding is tantamount to a declaration that plaintiff was legally adopted contrary to the rule as announced in Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412.

Common sense and logic dictate the futility and impossibility of plaintiff producing proof establishing literal compliance with the phrase, "at all times", as used in the decree, consequently this finding of the court is not susceptible to the literal construction apparently placed thereon by the defendant. The principle has been laid down that the general rules of construction of written instruments apply to construction of judgments, and that the intention of the court must be determined from all parts of the judgment, and words and clauses should be construed according to their natural and legal import. 49 C. J.S., Judgments, § 436, note 20, p. 863. And our courts have said that in construing a judgment, the legal effect, rather than the mere language used, governs. State ex rel. Anderson Motor Service Co. v. Public Service Commission, 234 Mo.App. 470, 134 S.W.2d 1069, opinion adopted by Supreme Court, 348 Mo. 613, 154 S.W.2d 777. In line with these enunciated principles, and considering the record and the decree in its entirety, we hold that by use of the questioned phrase, "at all times", the court only meant such period or duration of time as was essential to permit a finding that plaintiff was entitled to a declaration and decree that she was the adopted child of the defendant.

Defendant's suggestion that the recitation in the finding that defendant *in fact did adopt plaintiff* is tantamount to holding that plaintiff was legally adopted, is likewise lacking in merit and cannot be sustained. The italicized words seized upon by defendant as meaning a legal adoption must be considered and construed in connection with the entire sentence, which is, "That by her said representations and said agreement with plaintiff's natural mother, and by her acts and conduct, defendant in

fact did adopt plaintiff; and plaintiff is the child of defendant by adoption, as fully as though she were born to defendant in lawful wedlock." Viewed in light of the particular finding in its entirety, it is evident and clear that the italicized words cannot be construed to mean that the court found plaintiff had been legally adopted, particularly in view of the admission by defendant in her answer that she had not complied with the requirements of the adoption statutes, and the further fact that the filing of the suit was necessitated because of the failure of the defendant to do the very thing that she urges the court found she had done.

The judgment is affirmed.

ANDERSON, P. J., and SAM C. BLAIR, Special Judge, concur.